IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| GULSTAN E. SILVA, JR., as Personal Representative of the Estate of Sheldon Paul Haleck, | ) ) ) | Civil No. 15-00436 HG-KJM |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | |
| CHRISTOPHER CHUNG; SAMANTHA CRITCHLOW; AND STEPHEN KARDASH, | ) ) ) | |
| Defendants. | ) ) ) | |

## ORDER #1 ON PLAINTIFF'S MOTIONS IN LIMINE

**PLAINTIFF'S MOTION IN LIMINE NO. 1**

**MOTION TO EXCLUDE TESTIMONY, EVIDENCE, AND ARGUMENT REGARDING "EXCITED DELIRIUM" AT TRIAL (ECF No. 266) is DENIED**

Plaintiff's Motion in Limine No. 1 seeks to exclude Defendants' expert, Dr. Stacey Hail, M.D., and her expert opinion relating to "excited delirium syndrome."

Dr. Hail is an Emergency Medicine Physician and a Medical Toxicologist certified by the American Board of Emergency Medicine and the American Board of Medical Toxicology. She is an Associate Professor in the Department of Emergency Medicine at the University of Texas Southwestern Medical Center at Dallas, Texas. She currently serves as an attending physician in the Parkland Hospital Emergency Department in Texas, which is a Level

1 Trauma Center and is represented to have the most emergency room visits of any single hospital in the United States.  (Ex. A at p. 1, ECF No. 308-2).

Plaintiff makes two principal objections to Dr. Hail being called to testify as an expert witness.

First, Plaintiff claims that Dr. Hail is not qualified to testify about the Decedent's cause of death.

Second, Plaintiff argues that Dr. Hail's opinion should be excluded because her conclusion that the Decedent died as a result of Excited Delirium Syndrome is not reliable.

## A.    Dr. Hail Is Qualified To Provide Expert Testimony As To The Decedent's Cause Of Death

Federal Rule of Evidence 702 provides that "scientific, technical, or other specialized knowledge" by a qualified expert is admissible if it will "help the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Civ. P. 702.

The United States Supreme Court held in Daubert v. Merrell Dow Pharms., 509 U.S. 579, 589 (1993) that the District Court has a gatekeeping responsibility to objectively screen expert testimony to ensure that it is not only relevant, but reliable. The District Court's obligation applies to technical and other specialized knowledge as well as testimony based on scientific knowledge.  Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141-42

(1999).

The Ninth Circuit Court of Appeals has explained that expert testimony is relevant if the evidence logically advances a material aspect of the party's case. Estate of Barabin v. AstenJohnson, Inc., 740 F.3d 457, 463-64 (9th Cir. 2014). The Court must decide if an expert's testimony has a reliable basis in the knowledge and experience of the relevant discipline. Kumho, 526 U.S. at 149.

Causation is an extremely relevant issue in this case. To prevail in a Section 1983 action, the plaintiff must demonstrate that the defendant's conduct was the cause of the claimed injury. Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008). To meet the causation requirement, the plaintiff must establish both causation-in-fact and proximate causation. Id. The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation. Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988).

Dr. Hail's expert report provides an opinion as to the Decedent's cause of death. Dr. Hail opines that the Decedent died from methamphetamine-induced Excited Delirium Syndrome. (Ex. A at p. 26, ECF No. 308-2). The report concludes that the Defendant Officers did not cause the Decedent's death. Dr.

Hail's expert report states that the Decedent did not die from traumatic causes, nor from exposure to the Taser or exposure to OC spray, or due to restraint by the Defendant Officers.

Dr. Hail is qualified to provide a medical expert opinion as to cause of death. Dr. Hail has served as a medical expert witness in numerous cases. Several federal courts have certified Dr. Hail as a medical expert and admitted her expert opinion testimony concerning cause of death. United States v. Shelton, 2019 WL 1227967, *4 (E.D. Mich. March 15, 2019); United States v. Jain, 2019 WL 1110800, *6 (D. N.M. March 11, 2019); United States v. MacKay, 20 F.Supp.3d 1287, 1291 (D. Utah 2014); United States v. Santillana, 604 F.3d 192, 194 (5th Cir. 2010).

Plaintiff objects on the basis that Dr. Hail is not a pathologist and did not perform the autopsy of the Decedent. Plaintiff's argument is misplaced. Such an argument goes to the weight of the opinion, not the admissibility. A physical examination of the decedent is not required for an expert to be permitted to testify as to cause of death. Williams v. Daszko, 2018 WL 2684314, *6 (E.D. Cal. June 5, 2018) (rejecting a challenge to a medical expert on the basis that the expert did not conduct a physical examination of the patient).

The inquiry is whether the expert has the qualifications based on his or her knowledge, skill, experience, training, or education. Kumho, 526 U.S. at 149. Toxicologists are regularly

4

found to have the requisite education, training, and experience to provide expert opinion as to the cause of death despite not performing the autopsy of the decedent.  LeBlanc v. City of Los Angeles, 2006 WL 4752614, *8 (C.D. Cal. Aug. 16, 2006) (finding toxicologist permitted to testify as to cause of death even though she was not a pathologist); see Wereb v. Maui Cnty., 2011 WL 13279150, *2 (D. Haw. Dec. 2, 2011) (finding an expert with a Ph.D. was permitted to testify as to cause of death even though he is not a coroner, medical examiner, or medical doctor).

Dr. Hail is qualified to render an expert opinion on cause of death based on her knowledge, skill, experience, training, and education.

### B.   Dr. Hail May Provide Expert Testimony As To Excited Delirium Syndrome

The District Court's inquiry into an expert's admissibility pursuant to Daubert is a flexible one.  Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc., 738 F.3d 960, 969 (9th Cir. 2013). The trial court has discretion to decide how to test an expert's reliability as well as relevance based on the circumstances of the particular case.  Primiano v. Cook, 598 F.3d 558, 564 (9th Cir. 2010).

The trial court is "supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable."  Alaksa Rent-A-Car, 738 F.3d at

969.

Plaintiff argues that Dr. Hail's conclusion that the Decedent died as a result of methamphetamine-induced Excited Delirium Syndrome should be excluded because it is not a recognized medical diagnosis by the American Medical Association, American Psychiatric Association, or the World Health Organization. Plaintiff's argument goes to weight, not admissibility. The district court is not tasked with deciding whether the expert is right or wrong, just whether the testimony has substance such that it would be helpful to the jury. Id. at 969.

Dr. Hail's expert opinion is based on reliable data, principles, and methods. Fed. R. Evid. 702; Daubert, 509 U.S. at 589. In 2008, the American College of Emergency Physicians commissioned a task force of nineteen experts to study Excited Delirium Syndrome. (Am. College of Emergency Physicians, Excited Delirium Task Force White Paper Report to the Council and Board of Directors, ("White Paper"), dated September 10, 2009, Trial Exhibit 79).

On September 10, 2009, the task force published a study that provides a review of the history and epidemiology of the syndrome, its clinical perspectives, potential pathophysiology, diagnostic characteristics, differential diagnoses, and clinical treatment. The study concludes, as follows:

It is the consensus of the Task Force that [Excited Delirium Syndrome] is a unique syndrome which may be identified by the presence of a distinctive group of clinical and behavioral characteristics that can be recognized in the pre-mortem state. [Excited delirium syndrome], while potentially fatal, may be amendable to early therapeutic intervention in some cases.

(Id.)

The Eleventh Circuit Court of Appeals has explained that "'excited delirium' is a widely accepted entity in forensic pathology and is cited by medical examiners to explain the sudden in-custody deaths of individuals who are combative and in a highly agitated state." Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1299 n.4 (11th Cir. 2009) (citing the Report of the Counsel on Science and Public Heath, 453 (Am. Medical Assoc., Annual Meeting, 2009)). Numerous federal district courts have found expert testimony regarding Excited Delirium Syndrome to be sufficiently reliable and admissible despite Daubert challenges to its admissibility. See e.g., Lass v. Cnty. of Orange, 2010 WL 11561183, *1 (C.D. Cal. Sept. 17, 2010); Galack v. PTS of Am., LLC, 2015 WL 5692327, *18 (N.D. Ga. July 6, 2015); Barnwell v. Roane Cnty., 2016 WL 1457928, *3-*4 (E.D. Tenn. Apr. 12, 2016).

The Ninth Circuit Court of Appeals has permitted district courts to rely on expert testimony regarding Excited Delirium Syndrome in granting police officers qualified immunity in Section 1983 cases. Marquez v. City of Phoenix, 693 F.3d 1167, 1171 (9th Cir. 2012); Gregory v. Cnty. of Maui, 523 F.3d 1103,

1109-10 (9th Cir. 2008).

Dr. Hail explains in her report that she reviewed a number of studies concerning Excited Delirium Syndrome including both the American College of Emergency Physician's White Paper and the National Institute of Justice's report from its Excited Delirium Syndrome Workshop Panel. The studies discuss the definition, epidemiology, pathophysiology, differential diagnosis, and acute treatment of Excited Delirium Syndrome and the common features of the syndrome. Dr. Hail reviewed the common features from the studies and compared them to those exhibited by the Decedent in rendering her opinion. Dr. Hail's methods are sufficiently reliable to allow her to provide an expert opinion.

Plaintiff objects to Dr. Hail's conclusion that the Decedent's death was caused by Excited Delirium Syndrome on the basis that it is a differential diagnosis rather than the result of a definitive diagnostic test. Plaintiff's objection is misplaced. The Ninth Circuit Court of Appeals has found that differential diagnosis is a common, reliable methodology under the <u>Daubert</u> standard that is admissible. <u>Messick v. Novartis Pharms. Corp.</u>, 747 F.3d 1193, 1197 (9th Cir. 2014) (collecting cases explaining that reliable differential diagnosis may form the basis of an expert's causation testimony); <u>Clausen v. M/V New Carissa</u>, 339 F.3d 1049, 1057-58 (9th Cir. 2003) (explaining that differential diagnosis is a reliable, standard scientific

technique of identifying the cause of a medical problem by eliminating the likely causes until the most probable one is isolated).

Plaintiff's challenges to Dr. Hail's expertise and opinions go to the weight of her opinion, but they do not provide a basis for exclusion of the testimony.  <u>Primiano</u>, 598 F.3d at 566-68.

Plaintiff is permitted to cross-examine Dr. Hail on her conclusions, the reliability of the principles and methods she utilized, any conflicting expert testimony, and any contrary evidence in the record.  <u>City of Pomona v. SQM No. Am. Corp.</u>, 750 F.3d 1036, 1049 (9th Cir. 2014).  It is the job of the jury to determine whether to credit Dr. Hail's opinion.  <u>Id.</u> (citing <u>United States v. Sandoval-Mendoza</u>, 472 F.3d 645, 654 (9th Cir. 2006)).

Plaintiff's Motion in Limine No. 1 To Exclude Testimony, Evidence, and Argument Regarding "Excited Delirium Syndrome" At Trial (ECF No. 266) is **DENIED.**

## **PLAINTIFF'S MOTION IN LIMINE NO. 2**

**MOTION TO EXCLUDE TESTIMONY AND REPORT OF MR. MARK KROLL FROM BEING INTRODUCED AT TRIAL (ECF No. 267) is** <u>**DENIED**</u>

Plaintiff's Motion in Limine No. 2 seeks to exclude Defendants' expert, Dr. Mark Kroll, Ph.D., and his expert opinion relating to Tasers and electrical weapons.

Plaintiff makes two principal arguments.  <u>First</u>, Plaintiff

argues that Dr. Kroll is biased and not qualified to give an expert opinion.  Second, Plaintiff challenges Dr. Kroll's methodology in reaching his opinion that the Taser did not electrocute the Decedent in this case.

### A.    Dr. Kroll Is Qualified To Provide Expert Testimony As To Electric Weapons and The Use Of The Taser On The Decedent

Dr. Kroll is a Biomedical Scientist with a specialty in bioelectricity, that is, interaction of electricity and the body. He has a Masters of Science and a Ph.D. in Electrical Engineering and is currently an adjunct full professor in biomedical engineering at California Polytechnic University and the University of Minnesota and a principal in Mark Kroll & Associated, LLC.

Dr. Kroll has been issued 370 U.S. patents and represents that he holds the most patents on electrical medical devices of anyone in the world.  (Def.'s Ex. A, at p. 4, ECF No. 309-2).  He is a Fellow of the American College of Cardiology, a Fellow of the Heart Rhythm Society, a Fellow of the IEEE Engineering in Medicine and Biology Society, and a Fellow of the American Institute for Medical and Biological Engineering.  Dr. Kroll is the author of over 200 abstracts, papers, and book chapters and is also the co-editor of 4 books, including 2 scientific books on electrical weapons.

Dr. Kroll serves on numerous boards including the board for Taser International, Haemonetics, Prostracare, VivaQuant, and Recombinetics.

Plaintiff argues that Dr. Kroll should be precluded from testifying because he is a member of the Board for Taser International and is also the Chair of Taser International's Litigation Committee. Plaintiff's argument is misplaced. Plaintiff's argument goes to the weight and credibility of Dr. Kroll's testimony, not its admissibility. The Ninth Circuit Court of Appeals has explained that "as a general rule, bias is not a permissible reason for the exclusion of expert testimony." United States v. Thompson, 2007 WL 2044725, *2 (9th Cir. July 16, 2007) (citing United States v. Abonce-Barrera, 257 F.3d 959, 965 (9th Cir. 2001)).

Causation is a central issue in this case, specifically whether Defendant Chung's use of the Taser on the Decedent may have contributed to his death. Dr. Kroll has been certified to provide expert opinion on similar issues by numerous federal courts. Khottavongsa v. City of Brooklyn Ctr., 2017 WL 3822877, *6 (D. Minn. Aug. 30, 2017); Martin v. City of Reading, 2015 WL 4714649, *2 (E.D. Penn. Aug. 7, 2015); Estate of Carlock v. Williamson, 2012 WL 75765, *2 (C.D. Ill. Jan. 10, 2012).

Dr. Kroll has the requisite training, skill, education, and experience to testify regarding the use of Tasers and the effect

it may or may not have had on the Decedent.  Kumho, 526 U.S. at
149; Wereb, 2011 WL 13279150, at *2.

   **B.   Dr. Kroll's Expert Report Satisfies the Requirements of
         Federal Rule of Evidence 702 and Daubert**

   Dr. Kroll conducted an audio analysis from the deployments
of the Taser at issue in this case.  Dr. Kroll developed a
software tool which he used in his analysis.  Dr. Kroll's expert
report sets forth that the software he used is a widely accepted
tool in biological and psychological research for sound analysis.

   Dr. Kroll reviewed the audio signatures from the recording
of the Taser deployments in this case.  Dr. Kroll evaluated the
sound emitted to determine if the Taser deployments resulted in
an open circuit or an intact circuit to the Decedent.  Dr.
Kroll's report explains that an open-circuit occurs when a wire
is broke, a probe misses, there is a clothing disconnect, or a
probe is dislodged.  The expert report opines that an open-
circuit results in a louder sound and crackling being emitted
from an electrical arc.

   Dr. Kroll's report also reviewed the video from the Taser
deployments.  The report explains the effects the Taser would
have had on the Decedent given the distances at issue in the
videos  Dr. Kroll asserts that Officer Chung's deployment of the
Taser resulted in a maximum of 1 second of probe-mode electronic
control to the Decedent.

                              12

Dr. Kroll's expert report cites to more than 150 authorities to support the scientific basis for his opinions. The Defendant Officers explain in their Opposition that one of the references is Dr. Kroll's publication "Significance of Sound During CEW Application" which is a peer-reviewed article. The article has received no negative comments and is published in a learned treatise. (Opposition at pp. 14-156, ECF No. 309).

The expert report states that Dr. Kroll's opinions were developed using well-recognized scientific disciplines, including bioelectricity, electrophysiology, and biomedical science, and that Dr. Kroll applied various qualitative and quantitative research methodologies as outlined in the report. (Def.'s Ex. A at pp. 26-33, ECF No. 309-2). Dr. Kroll's report satisfies the requirements of Fed. R. Evid. 702.

The soundness of the factual underpinnings and the correctness of Dr. Kroll's conclusions are matters for the jury, and do not go to the admissibility of his opinion. <u>Daubert</u>, 509 U.S. at 596 (explaining that vigorous cross-examination and presentation of contrary evidence are appropriate means of attacking an expert opinion but do not provide a basis for exclusion).

Plaintiff's Motion in Limine No. 2 to Exclude Testimony And Report Of Dr. Mark Kroll, Ph.D. (ECF No. 267) is **DENIED.**

**PLAINTIFF'S MOTION IN LIMINE NO. 3**

**MOTION TO EXCLUDE ARGUMENTS ABOUT QUALIFIED IMMUNITY AND THE COMMUNITY CARETAKING DOCTRINE (ECF No. 268) is <u>GRANTED, IN PART, AND DENIED, IN PART</u>**

Plaintiff's Motion in Limine No. 3 seeks to exclude Defendants from presenting evidence and argument regarding qualified immunity and the community caretaking doctrine.

Defendants oppose the Motion, in part. Defendants agree that it will not argue or use the term "qualified immunity" before the jury.

Defendants argue, however, that factual issues regarding qualified immunity are relevant and necessary issues for trial. Defendants also argue that issues regarding the Defendant Officers' community caretaking functions are relevant for trial.

**A.    Procedural Background**

On June 28, 2017, the District Court issued an Order denying the Defendant Officers' request for qualified immunity as to Plaintiff's claim for excessive force in violation of the Fourth Amendment to the United States Constitution. (ECF No. 224).

On July 10, 2018, the Ninth Circuit Court of Appeals issued an unpublished Memorandum decision. (ECF No. 241). The appellate court affirmed the district court's denial of qualified immunity and remanded for further proceedings. In its decision, the

14

appeals court held that viewing the evidence in the light most favorable to the Plaintiff, there were factual issues as to whether the Defendant Officers used excessive force in deploying the Taser and the pepper spray against the Decedent.

The Defendant Officers filed a petition for certiorari to the United States Supreme Court that was denied on February 19, 2019.  (ECF No. 252).

## B.  Evidence Regarding Qualified Immunity Is Relevant And Admissible At Trial

The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  Pearson v. Callahan, 555 U.S. 223, 231 (2009).  The test is (1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct.  Reese v. Cnty. of Sacramento, 888 F.3d 1030, 1037 (9th Cir. 2018).

The second prong of determining if the right was "clearly established" is a matter of law to be decided by the Court.  Morales v. Fry, 873 F.3d 817, 824-25 (9th Cir. 2017).  Only the jury, however, can decide disputed factual issues and therefore the jury must first decide the disputes of fact regarding whether there has been a violation of a constitutional right before the

Court may rule upon the second prong of the qualified immunity test.  Reese, 888 F.3d at 1039-40.

The Ninth Circuit Court of Appeals construed the record in the light most favorable to the Plaintiff in its decision on qualified immunity.  The appellate court did not find facts and there are no facts established for trial regarding qualified immunity.  The appeals court specifically found that "there is a factual issue for the jury whether [Defendant Officers'] use of force violated both the Forth Amendment and clearly established law" which must be decided first before determining whether the Defendant Officers are entitled to qualified immunity.  Silva v. Chung, 740 Fed. Appx. 883, 887 (9th Cir. 2018).

The Ninth Circuit Court of Appeals did not find that the Defendant Officers could not raise qualified immunity at trial. Qualified immunity is a defense and the factual questions as to the Defendant Officers' actions is a question for the jury. Morales, 873 F.3d at 823.  Defendants are allowed to proffer evidence and testimony regarding the totality of the circumstances surrounding the Defendant Officers' use of force. Such evidence is relevant for the ultimate issue at trial and as to whether the Defendant Officers are entitled to qualified immunity.  The Defendant Officers are not precluded from seeking qualified immunity at the close of evidence pursuant to Federal Rule of Civil Procedure 50 or from the appellate court if

necessary.

**C.  Evidence Regarding Community Caretaking Is Relevant And Admissible At Trial**

It is well established that police officers serve community caretaking functions that are separate from detection, investigation, or acquisition of evidence relating to violation of a criminal statute. <u>Cady v. Dombrowski</u>, 413 U.S. 433, 441 (1973); <u>Ames v. King Cnty.</u>, 846 F.3d 340, 348 (9th Cir. 2017). Officers' community caretaking actions must meet the overarching standard of reasonableness based on all of the facts presented. <u>Miranda v. City of Cornelius</u>, 429 F.3d 858, 864 (9th Cir. 2005).

In its decision on appeal, the Ninth Circuit Court of Appeals addressed community caretaking in light of the arguments raised by the Parties. <u>Silva</u>, 740 Fed. Appx. at 887. The appellate court stated that there was evidence that the Defendant Officers were serving in a community caretaking function, but the appellate court found that there was a question as to the reasonableness of the Officers' conduct when reviewing the record in the light most favorable to the Plaintiff.

Defendants are not precluded from arguing or presenting evidence during trial that they were engaged in community caretaking and acted reasonably given the severity of the circumstances during the incident on March 16, 2015.

Defendants are allowed to elicit evidence of the Officers'

17

community caretaking function and the surrounding circumstances during the March 16, 2015 incident.

Plaintiff's Motion in Limine No. 3 To Exclude Any Arguments About Qualified Immunity And The Community Caretaking Doctrine (ECF No. 268) is **GRANTED, IN PART, AND DENIED, IN PART.**

The Motion is **GRANTED** on the basis that the Parties may not argue the issue of qualified immunity to the jury.

The Motion is **DENIED** on the basis that the Defendants are not precluded from presenting evidence and establishing facts regarding qualified immunity and the Defendants may argue and elicit testimony regarding their community caretaking function.

## PLAINTIFF'S MOTION IN LIMINE NO. 4

**MOTION TO EXCLUDE REFERENCES TO CIRCUMSTANCES SURROUNDING THE RETIREMENT OF PLAINTIFF'S EXPERT, RICHARD LICHTEN, FROM HIS FORMER POSITION WITH THE LOS ANGELES COUNTY SHERIFF'S DEPARTMENT (ECF No. 270) is GRANTED, IN PART, AND DENIED, IN PART**

Plaintiff seeks to preclude Defendants from introducing evidence concerning the circumstances of Plaintiff's expert Richard Lichten's retirement from the Los Angeles County Sheriff's Department in 2008.

Defendants argue that Mr. Lichten engaged in surreptitious sexual misconduct including masturbating in a female employee's office after hours. Defendants assert the misconduct was the subject of a civil lawsuit, which Mr. Lichten settled.

Defendants argue that Lichten was forced to resign because of the sexual misconduct complaint.  Defendants argue that such evidence is relevant and request they be able to cross-examine Mr. Lichten about the misconduct for bias and credibility purposes.

Proof of bias is ". . . almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony."  United States v. Abel, 469 U.S. 45, 52 (1984).

Other federal courts have addressed the same issue regarding Mr. Lichten's retirement.  Recently two separate federal district courts have found that evidence of Mr. Lichten's forced retirement is admissible as to his possible bias.  See Eliot v. Cnty. of Orange, 2018 WL 5099709, *2 (C.D. Cal. May 4, 2018); Ball v. Cnty. of Los Angeles, 2015 WL 1467179, *5 (C.D. Cal. Mar. 23, 2015).

In Eliot, the District Court for the Central District of California explained that "Mr. Lichten has admitted to this sexual misconduct in declarations and testimony given in other civil lawsuits."  Eliot, 2018 WL 5099709, *1.  "According to Mr. Lichten's own sworn testimony given in other cases, when it was discovered that he had been masturbating in a co-worker's office, he was given the choice to retire or to face a sexual harassment investigation.  In other words, he was arguably forced out of his

19

position at the LASD after a decades-long career in law enforcement.  As Defendants argue, Mr. Lichten may harbor resentment about being compelled into retirement, and may have a bias against law enforcement agencies as a result." Id. at *2.

The Court recognizes that the details of Mr. Lichten's retirement are inflammatory and could confuse the jury and waste time on a collateral matter.  Fed. R. Evid. 403.

The Court will permit the Parties to inquire of Mr. Lichten as to whether, at the time he retired, there was a complaint for misconduct against him.  They could then ask if he retired in lieu of an investigation and they may inquire if he bears any ill will against the Los Angeles County Sheriff's Department or any other police department.

The Parties may not introduce evidence of or ask details about the complaint, the fact that it was sexual in nature, or otherwise offer evidence or argument pertaining to alleged misconduct unless for impeachment purposes.  Defendants must raise any possible impeachment issue with the Court before it seeks to introduce such information before the jury.

Plaintiff's Motion in Limine No. 4 To Exclude References To Circumstances Surrounding The Retirement Of Plaintiff's Expert, Richard Lichten, From His Former Position With Los Angeles County Sheriff's Department (ECF No. 270) is **GRANTED, IN PART, AND DENIED, IN PART.**

**PLAINTIFF'S MOTION IN LIMINE NO. 5**

**MOTION TO BAR ALL EVIDENCE OF SHELDON HALECK'S PRIOR CRIMES, MISCONDUCT, WRONGS OR ACTS, AND ANY ACTS OF JESSICA HALECK NOT RELEVANT TO THE EVENTS OF MARCH 16, 2015 (ECF No. 286)**

The ruling on Plaintiff's Motion in Limine No. 5 is set forth in the Court's Order #3 on Motions in Limine.

**PLAINTIFF'S MOTION IN LIMINE NO. 6**

**MOTION TO BAR ALL EVIDENCE OF ANY EYEWITNESSES TO THE ARREST AND SEIZURE OF SHELDON HALECK ON MARCH 16, 2015 (ECF No. 287) is DENIED**

Plaintiff's Motion in Limine No. 6 seeks to bar all eyewitness testimony except for the testimony of the Defendant Officers.

Plaintiff argues that eyewitness testimony of the subject incident is not relevant because reasonableness in an excessive force case is based upon the perspective of a reasonable officer on the scene, citing Hopkins v. Andaya, 958 F.2d 881, 885 (9th Cir. 1992).

Plaintiff appears to argue that testimony from any eyewitness who is a bystander or percipient witness is not admissible in excessive force cases. Plaintiff's argument is not well taken. Credibility is often an integral part of excessive force cases and eyewitness testimony is relevant and probative as to the respective Parties' version of events. Smith v. City of Hemet, 394 F.3d 689, 701 (9th Cir. 2005) (en banc) (explaining

that excessive force cases "almost always turn on a jury's credibility determinations").

Eyewitness testimony from bystanders is relevant. <u>Hung Lam v. City of San Jose</u>, 869 F.3d 1077, 1085 (9th Cir. 2017) (finding the eyewitness testimony of the neighbor provided substantial evidence for the jury to find that the defendant officer used excessive force).

Plaintiff's Motion in Limine No. 6 to Bar All Evidence of Any Eyewitness To The Arrest And Seizure Of Sheldon Haleck On March 16, 2015, Other Than The Officers Involved In The Arrest And Seizure (ECF No. 287) is **DENIED.**


<u>**CONCLUSION**</u>


Plaintiff's Motion in Limine No. **1** To Exclude Testimony, Evidence, and Argument Regarding "Excited Delirium Syndrome" At Trial (ECF No. 266) is **DENIED.**

Plaintiff's Motion in Limine No. **2** to Exclude Testimony And Report Of Dr. Mark Kroll, Ph.D. (ECF No. 267) is **DENIED.**

Plaintiff's Motion in Limine No. **3** To Exclude Any Arguments About Qualified Immunity And The Community Caretaking Doctrine (ECF No. 268) is **GRANTED, IN PART, AND DENIED, IN PART.**

Plaintiff's Motion in Limine No. **4** To Exclude References To Circumstances Surrounding The Retirement Of Plaintiff's Expert,

Richard Lichten, From His Former Position With Los Angeles County Sheriff's Department (ECF No. 270) is **GRANTED, IN PART, AND DENIED, IN PART.**

Plaintiff's Motion in Limine No. **6** to Bar All Evidence of Any Eyewitness To The Arrest And Seizure Of Sheldon Haleck On March 16, 2015, Other Than The Officers Involved In The Arrest And Seizure (ECF No. 287) is **DENIED.**

IT IS SO ORDERED.

Dated: May 21, 2019, Honolulu, Hawaii.



Helen Gillmor
United States District Judge

<u>Gulstan E. Silva, Jr. as Personal Representative of the Estate of Sheldon Haleck v. Christopher Chung; Samathan Critchlow; and Stephen Kardash</u>, Civil No. 15-00436 HG-KJM; **ORDER #1 ON PLAINTIFF'S MOTIONS IN LIMINE**