IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| GULSTAN E. SILVA, JR., as Personal Representative of the Estate of Sheldon Paul Haleck, | ) ) ) ) | Civil No. 15-00436 HG-KJM |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| CHRISTOPHER CHUNG; SAMANTHA CRITCHLOW; and STEPHEN KARDASH, | ) ) ) | |
| Defendants. | ) ) ) | |

**ORDER DENYING PLAINTIFF'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, MOTION FOR NEW TRIAL (ECF No. 381)**

Plaintiff Gulstan E. Silva, Jr., as Personal Representative of the Estate of Sheldon Paul Haleck, brought an action, pursuant to 42 U.S.C. § 1983, alleging that Haleck's rights under the Fourth Amendment to the United States Constitution were violated by Defendants Honolulu Police Officers Christopher Chung, Samantha Critchlow, and Stephen Kardash.

Specifically, Plaintiff alleged the Defendant Officers used excessive force when they detained and arrested Haleck for disorderly conduct.

The Defendant Officers were called to the scene after 8:00 p.m. Haleck was wearing dark clothing and moving about in the dark in the middle of a busy six-lane street, in Downtown Honolulu. Upon arrival, the Defendant Officers repeatedly

1

instructed Haleck to move out of the street, and on to the sidewalk.  Haleck failed to comply with their commands and evaded the Officers when they attempted to physically grab him.  The Defendant Officers warned Haleck that they would use pepper spray, and after that failed to deter him, an Officer warned him he would use a Taser if Haleck failed to comply with their commands.  Haleck continued to evade Officers and remained in the middle of the busy street.

The Defendant Officers used pepper spray and eventually one Officer deployed a Taser in order to detain Haleck, but both were ineffective.  Oncoming traffic continued to pass through the street, including a Honolulu City Bus that drove less than 15 feet from Haleck and the Officers as they tried to catch and detain him.

Haleck eventually tripped and the Officers attempted to handcuff Haleck.  Haleck physically resisted the Officers, kicked, and flailed his body.  After he was detained, the Officers carried Haleck from the street to the sidewalk.

After being removed from the street, Haleck stopped breathing.  The Officers performed CPR and called an ambulance. An ambulance transported Haleck to the hospital where he died the following day.  Haleck died from methamphetamine-induced excited delirium syndrome.

The case went to trial and the jury returned a verdict in

favor of the Defendant Officers.

The District Court denied Plaintiff's Federal Rule of Civil Procedure 50(a) Motion for Judgment as a Matter of Law.

Plaintiff renews his Motion for Judgment as a Matter of Law pursuant to Federal Rule of Civil Procedure 50(b) and also seeks a new trial pursuant to Federal Rules of Civil Procedure 59 and 60.

PLAINTIFF'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, MOTION FOR NEW TRIAL (ECF No. 381) is **DENIED.**

## PROCEDURAL HISTORY

On October 20, 2015, Plaintiffs filed a Complaint. (ECF No. 1).

On March 29, 2016, Plaintiffs filed the FIRST AMENDED COMPLAINT. (ECF No. 31).

On March 10, 2017, Plaintiff filed the SECOND AMENDED COMPLAINT. (ECF No. 189).

On March 14, 2017, the Court issued an ORDER GRANTING, IN PART, AND DENYING, IN PART, PLAINTIFFS' MOTION TO DISMISS DEFENDANTS LOUIS M. KEALOHA, IN HIS OFFICIAL CAPACITY, CHAD SANO, REYNWOOD MAKISHI AND FRANK POJSL AND GRANTING PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT. (ECF No. 192).

On June 28, 2017, the Court issued an ORDER GRANTING DEFENDANT LOUIS M. KEALOHA'S MOTION FOR SUMMARY JUDGMENT AND

DENYING PLAINTIFFS' AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT
AS TO THE LIABILITY OF DEFENDANTS CHRISTOPHER CHUNG, SAMANTHA
CRITCHLOW, STEPHEN KARDASH, LOUIS M. KEALOHA, AND CITY AND COUNTY
OF HONOLULU FOR VIOLATIONS OF CONSTITUTIONAL RIGHTS AND GRANTING
DEFENDANT CITY AND COUNTY OF HONOLULU'S AMENDED MOTION FOR
SUMMARY JUDGMENT AND GRANTING, IN PART, AND DENYING, IN PART,
DEFENDANTS CHRISTOPHER CHUNG, SAMANTHA CRITCHLOW, AND STEPHEN
KARDASH'S AMENDED MOTION FOR SUMMARY JUDGMENT. (ECF No. 224).

Pursuant to the Court's June 28, 2017 Order, the only
remaining Plaintiff was Gulstan E. Silva, Jr. and the only
remaining Defendants were Christopher Chung, Samantha Critchlow,
and Stephen Kardash. (Id.)

The Court denied Defendants Christopher Chung, Samantha
Critchlow, and Stephen Kardash's Motion seeking qualified
immunity. (Id.)

On July 10, 2017, Defendants Christopher Chung, Samantha
Critchlow, and Stephen Kardash filed a NOTICE OF INTERLOCUTORY
APPEAL. (ECF No. 225).

On July 10, 2018, the Ninth Circuit Court of Appeals issued
a Memorandum Opinion, affirming the District Court's June 28,
2017 Order. (ECF No. 241).

On August 20, 2018, the panel denied Defendants Christopher
Chung, Samantha Critchlow, and Stephen Kardash's Motion for
Rehearing or for Rehearing En Banc. (ECF No. 242).

On September 4, 2018, the Ninth Circuit Court of Appeals denied Defendants' motion to stay the mandate pending the United States Supreme Court's review of their petition for certiorari. (ECF No. 243).

On September 18, 2018, the Ninth Circuit Court of Appeals issued the Mandate. (ECF No. 244).

On September 26, 2018, the District Court held a Status Conference and calendared proceedings for trial. (ECF No. 248).

On February 21, 2019, the United States Supreme Court denied Defendants' petition for writ of certiorari. (ECF No. 252).

On May 14, 2019, the District Court held a Final Pretrial Conference and hearing on the Parties' Motions in Limine. (ECF No. 338).

On May 17, 2019, the Court held a Further Final Pretrial Conference and further hearing on the Parties' Motions in Limine. (ECF No. 344).

On May 20, 2019, the Court held a third Final Pretrial Conference and hearing on the Parties' remaining Motions in Limine. (ECF No. 349).

On May 21, 2019, the Court issued ORDER #1 on PLAINTIFF'S MOTIONS IN LIMINE. (ECF No. 351).

On the same date, the Court issued ORDER #2 on DEFENDANTS' MOTIONS IN LIMINE. (ECF No. 352).

Also on May 21, 2019, the Court held jury selection. (ECF

No. 353).

On May 22, 2019, the Court held Jury Trial Day 1. (ECF No. 355).

On May 23, 2019, the Court held Jury Trial Day 2. (ECF No. 357).

On May 24, 2019, the Court issued the Parties' STIPULATION REGARDING SHELDON HALECK MEDICAL BILLINGS RE: MARCH 16, 2015 INCIDENT. (ECF No. 358).

Also on May 24, 2019, the Court held Jury Trial Day 3. (ECF No. 359).

On May 29, 2019, the Court held Jury Trial Day 4. (ECF No. 360).

Also on May 29, 2019, the Court issued ORDER #3 ON MOTIONS IN LIMINE. (ECF No. 361).

On May 30, 2019, the Court issued the Parties' STIPULATION REGARDING INCIDENT ON MARCH 15, 2015. (ECF No. 362).

Also on May 30, 2019, the Court held Jury Trial Day 5. (ECF No. 363).

On May 31, 2019, the Court held Jury Trial Day 6. (ECF No. 364).

On the same date, Defendants filed a Motion for Judgment as a Matter of Law. (ECF No. 365).

On June 3, 2019, Plaintiff filed a MEMORANDUM IN SUPPORT OF ORAL MOTION FOR JUDGMENT AS A MATTER OF LAW. (ECF No. 366).

Also on June 3, 2019, the Court held a Status Conference. (ECF No. 367). The Court denied Plaintiff's Motion for Judgment as a Matter of Law. (Id.) The Court deferred ruling on Defendants' Motion for Judgment as a Matter of Law pending the jury verdict. (Id.)

On June 4, 2019, the Court held Jury Trial Day 7, the Court gave Jury Instructions, and the Jury began deliberations. (ECF Nos. 368, 370).

On June 5, 2019, the Jury held deliberations Day 2. (ECF No. 369).

On June 6, 2019, the Jury held deliberations Day 3 and returned a verdict in favor of the Defendants. (ECF Nos. 371, 372).

On June 19, 2019, the Court issued an ORDER ON PUNITIVE DAMAGES. (ECF No. 377).

On the same date, the Clerk of Court entered Judgment in favor of the Defendants. (ECF No. 378).

On July 5, 2019, Plaintiff filed PLAINTIFF'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, MOTION FOR NEW TRIAL. (ECF No. 381).

On August 9, 2019, Defendants filed DEFENDANTS CHRISTOPHER CHUNG, SAMANTHA CRITCHLOW, AND STEPHEN KARDASH'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, MOTION FOR NEW TRIAL. (ECF No.

394).

On September 5, 2019, Plaintiff filed PLAINTIFF'S REPLY
MEMORANDUM IN SUPPORT OF PLAINTIFF'S RENEWED MOTION FOR JUDGMENT
AS A MATTER OF LAW OR, IN THE ALTERNATIVE, MOTION FOR NEW TRIAL.
(ECF No. 396).

The Court elects to decide the matter without a hearing
pursuant to District of Hawaii Local Rule 7.1(c).

## BACKGROUND

The following is a summary of the evidence presented at
trial, stated in the light most favorable to the jury's verdict:

The Subject Incident took place after 8:00 p.m., on March
16, 2015, on South King Street, in front of Iolani Palace in
Downtown Honolulu, Hawaii.

Sandy Apana was an eyewitness to the incident. She had left
work and was waiting for a Honolulu City Bus on the south side of
King Street. (Trial Tr. Day 6 at pp. 12-13, ECF No. 397). Apana
testified that she saw a man, later identified as Sheldon Paul
Haleck ("Haleck"), walk into the middle of South King Street.
(Id. at p. 13). Apana testified that Haleck appeared "kind of
big," was wearing dark colored clothing, and was moving around
and zigzagging in the middle of the street. (Id. at pp. 13-14).

Apana saw oncoming traffic driving down the street when

8

Haleck was moving about in the middle of the street. (Id. at pp. 13-14). Apana called 911 because she was worried that Haleck may cause an accident as cars were moving to avoid him, and she was also worried that Haleck may get hit by a car himself. (Id. at p. 14). Apana witnessed multiple cars drive by Haleck. (Id. at p. 15). Apana saw two officers arrive at the scene and testified that Haleck was running away from them. (Id.) Apana boarded the Number 4 Honolulu City Bus and continued to observe the officers chasing Haleck. (Id. at p. 16). Apana testified that while she was on board the bus, the bus drove past Haleck and the Officers in the middle of King Street. (Id.)

Chad Kumagai was another eyewitness to the incident. Kumagai was driving south on Richards Street to take a left turn on to King Street after 8:00 p.m. (Trial Tr. Day 5 at p. 89, ECF No. 386). Traffic was backed up and Kumagai was unable to pass through the green traffic light due to a car stopped in front of him, which was stopped due to Haleck standing in the middle of the street. (Id.) Kumagai testified that the car in front of him eventually passed through the intersection and turned left on King Street. (Id. at p. 90).

Kumagai testified that after the car drove down King Street, he was able to see Haleck, along with two police officers, in the middle of King Street, about 20 feet away from him. (Id. at pp. 90, 93). Kumagai described that the sun had completely gone down

9

and there were only streetlights lighting the scene, and that the man was wearing dark clothing.  (Id. at p. 90).  There was no officer or car blocking the intersection at that point.  (Id. at p. 91).  Kumagai saw a few cars drive through the intersection and down King Street past the officers and Haleck.  (Id.)

Defendant Officers Christopher Chung, Samantha Critchlow, and Stephen Kardash were the first three officers called to the scene.  The three Defendant Officers were sued in their individual capacities for their actions in detaining and arresting Haleck on March 16, 2015.

Officer Christopher Chung testified that he was on duty to patrol District 1, the Chinatown area, on March 16, 2015.  (Trial Tr. Day 1 at pp. 95-96, ECF No. 382).  He testified that he was in the area in Downtown Honolulu near the post office when he received a call that there was a male in the middle of South King Street.  (Id. at p. 104).  Chung testified that he responded to the call and saw Haleck walking down the middle of South King Street between the intersections of Richards Street and Merchant Street.  (Id. at pp. 105, 150-52, 156).

Officer Samantha Critchlow was second on the scene.  She testified that she drove to the scene to assist Officer Chung.  She testified that as she drove down South King Street, she was looking for the man in the street, but she did not see him given the darkness.  She drove by both Officer Chung and Haleck and did

not realize she missed them until she heard Officer Chung yell for her.  (Id. at pp. 153-54; Trial Tr. Day 2 at p. 81, ECF No. 383; Trial Tr. Day 3 at p. 20, ECF No. 384).  Officer Critchlow testified that there were other cars driving down King Street when she drove to the scene.  (Trial Tr. Day 3 at p. 17, ECF No. 384).

Officer Chung testified that when Officer Critchlow joined him on the scene, Haleck was in the middle of the street, there was traffic coming toward him and Haleck, and that Haleck was posing a hazard to himself, Officer Chung, Officer Critchlow, and the cars driving around them.  (Trial Tr. Day 1 at pp. 100, 110, 156, ECF No. 382).

At the time of the incident, Haleck was approximately 6 feet tall and weighed between 200 to 210 pounds.  (Id. at p. 157). Officer Chung was 62 years old, was 5 feet 5 inches tall, and weighed 125 pounds.  (Id. at pp. 145, 157).  Officer Critchlow was 4 feet 11 inches tall and weighed 120 pounds.  (Id. at p. 157).

Officer Chung and Officer Critchlow both instructed Haleck to move to the sidewalk but Haleck refused to comply with their commands.  (Id. at pp. 100, 154-55, 163; Trial Tr. Day 2 at p. 82, ECF No. 383; Trial Tr. Day 3 at p. 25, ECF No. 384).  Haleck evaded the Officers' efforts to physically grab him and ran away from them to avoid being detained.  (Trial Tr. Day 1 at p. 108,

ECF No. 382; Trial Tr. Day 2 at p. 151, ECF No. 383; Trial Tr.
Day 3 at p. 25, ECF No. 384).

Eyewitness Chad Kumagai heard Officer Critchlow repeatedly instruct Haleck to move to the sidewalk and to get off the street. (Trial Tr. Day 5 at p. 93, ECF No. 386). Kumagai testified that Haleck did not comply with the Officers and jogged back and forth in the middle of King Street. (Id.)

Officer Critchlow attempted to grab Haleck by lunging at him and grabbing him with both of her hands, but Haleck "juked" her by shuffling his feet and spinning away from her. (Trial Tr. Day 3 at p. 27, ECF No. 384). Officer Critchlow and Officer Chung chased Haleck but he moved and dodged them as he moved about in the middle of King Street. (Id. at p. 30; Trial Tr. Day 1 at pp. 108, 158-60, ECF No. 382). Officer Chung testified that he could hear cars passing him on the roadway as they tried to detain Haleck. (Trial Tr. Day 1 at p. 109, ECF No. 382; Tr. Day 2 at p. 6, ECF No. 383).

Officer Critchlow testified that she feared for Haleck's safety because he was in the middle of the six-lane street, the streetlights were dim, and people regularly drive over the speed limit on South King Street. (Tr. Day 2 at pp. 82-83, ECF No. 383).

Officer Critchlow testified that as she attempted to detain Haleck, she saw Haleck take a fighting stance, with closed fists

and his legs spread apart, as if he was going to throw a punch. (Id. at p. 83).

Officer Chung and Officer Critchlow gave warnings to Haleck that they would use pepper spray, and they did deploy pepper spray multiple times at Haleck to try and subdue him, but the pepper spray had no effect on Haleck. (Trial Tr. Day 1 at pp. 110, 157, 161-63, ECF No. 382; Trial Tr. Day 2 at p. 82, ECF No. 383; Trial Tr. Day 3 at pp. 34, 48, ECF No. 384). Eyewitness Kumagai testified that he heard the Officers give warnings that they would use pepper spray. (Trial Tr. Day 5 at p. 96, ECF No. 386). Kumagai testified that the pepper spray did not appear to be effective and Haleck continued to evade the Officers. (Id.)

Officer Kardash was the third officer to respond to the scene. Officer Kardash testified that he heard Officer Critchlow request backup. (Trial Tr. Day 4 at p. 6, ECF No. 385). Officer Kardash testified that he drove down Richards Street and stopped his vehicle prior to King Street. (Id. at p. 7). He stated that he saw Officer Cricthlow about 30 to 40 yards away and that she was running after Haleck. (Id. at p. 7). Officer Kardash saw Officer Chung behind Officer Critchlow. (Id. at p. 7).

Officer Kardash saw Officer Critchlow try to grab Haleck but noticed that Haleck was physically flailing his arms and trying to prevent Officer Critchlow from grabbing him. (Id. at p. 8). Officer Kardash thought Haleck was trying to physically assault

13

Officer Critchlow.  (Id. at p. 8).

After Haleck saw Officer Kardash, he turned to walk back toward Officer Chung, causing Officer Chung to believe Haleck was trying to flee the scene.  (Trial Tr. Day 2 at p. 10, ECF No. 383).  Officer Kardash testified that he instructed Haleck to get on the ground and Haleck did not comply with his commands.  (Trial Tr. Day 4 at pp. 8-9, ECF No. 385).  The pepper spray had not stopped Haleck and the three officers were not able to catch Haleck.  (Id.)

Officer Chung gave two warnings to Haleck, stating that he would deploy his Taser if Haleck did not move to the sidewalk.  (Trial Tr. Day 1 at pp. 163-64, ECF No. 382; Trial Tr. Day 3 at p. 35, ECF No. 384).  Eyewitness Chad Kumagai testified that he heard Officer Chung warn Haleck that he would use his Taser if Haleck did not move to the sidewalk.  (Trial Tr. Day 5 at p. 94, ECF No. 386).  Officer Chung testified that he deployed his Taser for several reasons.  Haleck was posing a danger to himself and others, the pepper spray was not working, Haleck's evasions prevented the Officers from grabbing him, and Haleck refused to obey verbal commands.  (Trial Tr. Day 1 at pp. 111, 163-64, ECF No. 382).

The Taser was not effective.  (Trial Tr. Day 1 at pp. 117, 171, ECF No. 382).  Haleck did not suffer any neuromusclar incapacitation, meaning his body did not seize or lock up as a

result of the Taser, and Haleck was still moving about in the middle of King Street. (Id.; Trial Tr. Day 3 at pp. 38-39, ECF No. 384). Eyewitness Chad Kumagai testified that he observed Officer Chung deploy the Taser, and he saw that it did not affect Haleck. (Trial Tr. Day 5 at pp. 94-95, ECF No. 386).

Officer Chung and Officer Critchlow testified that they saw the Taser probes dangling on Haleck's clothing, and they did not believe the probes penetrated Haleck's skin or caused any electric shock. (Trial Tr. Day 1 at pp. 116-17, 170-71, ECF No. 382; Trial Tr. Day 3 at p. 36, ECF No. 384). Officers Chung and Critchlow testified that the Taser made a clicking sound, which they knew from their training meant that the Taser had not created an electric current. (Trial Tr. Day 1 at pp. 116-17, 170-71, ECF No. 382; Trial Tr. Day 3 at p. 46, ECF No. 384).

Officer Kardash testified that Haleck then started running toward him and that he thought Haleck was going to tackle him or assault him. (Trial Tr. Day 4 at p. 9, ECF No. 385). Officer Kardash testified that he pushed Haleck in an attempt to detain him but Haleck "physically resisted my push, pushed me back, and kept his balance." (Id. at p. 14). Officer Kardash testified that he then used pepper spray toward Haleck but it was not effective. (Id. at pp. 14-15, 41-42).

Officer Chung then deployed the Taser a second time and pulled the trigger one additional time, but, again, the Taser did

not affect Haleck. (Trial Tr. Day 1 at pp. 113-15, 168-71, ECF No. 382; Trial Tr. Day 4 at pp. 16, 46, ECF No. 385). Officer Kardash testified that he heard clicking sounds from the Taser, which indicated that it was not conducting electricity. (Trial Tr. Day 4 at p. 46, ECF No. 385).

Officer Kardash saw a large Honolulu City Bus drive by the Officers and Haleck on King Street during the second Taser deployment. (Id. at p. 22). During his testimony, Officer Kardash pointed to the bus that is visible on the second Taser video, Trial Exhibit 24. (Id. at p. 45). He identified the Honolulu City Bus driving through the scene. (Id.) Officer Kardash explained that the city bus was approximately 10 to 15 feet from him. (Id. at p. 48). Officer Kardash testified that he felt there was an immediate threat to Haleck, himself, and the other Officers because of the city bus that passed through the scene and they "were all in danger of being run over by a car." (Id. at pp. 27, 48).

Eyewitness Kumagai also observed the Honolulu City Bus drive down King Street past the Officers and Haleck. (Id. at p. 91). Eyewitness Sandy Apana testified that she was actually a passenger on the Honolulu City Bus, observing as it drove through the scene. (Trial Tr. Day 6 at p. 16, ECF No. 397).

Kumagai testified that he was concerned for the safety of Haleck and the Officers given the traffic, the dark clothes that

Haleck was wearing, and the minimal lighting at the time. (Trial Tr. Day 5 at p. 93, ECF No. 386).

Officer Chung testified that eventually Haleck's shorts fell down and tripped him, causing Haleck to fall to the ground. (Trial Tr. Day 2 at pp. 13-14, ECF No. 383). Officer Chung identified Haleck tripping in the video, Trial Exhibit 24. (Id.)

After Haleck fell, the Officers tried to detain Haleck. (Id. at p. 14). Haleck struggled with the Officers, tried to push himself up, and was "flailing, kicking, rolling around." (Id. at p. 15; Trial Tr. Day 3 at p. 49, ECF No. 384; Trial Tr. Day 4 at pp. 16-17, ECF No. 385).

Officers Reynwood Makishi and Chad Sano arrived on the scene and observed Officers Chung, Critchlow, and Kardash physically struggling to detain Haleck. (Trial Tr. Day 3 at p. 159, ECF No. 384). Officer Makishi testified that Haleck was physically resisting, kicking and thrashing his legs, and screaming. (Id. at pp. 159, 168). Officer Makishi testified Haleck displayed remarkable physical strength and endurance when the Officers tried to detain him. (Id. at p. 169). Handcuffs and leg shackles were applied to Haleck and he was carried from the street onto the sidewalk. (Trial Tr. Day 2 at p. 19, ECF No. 383; Trial Tr. Day 3 at pp. 52, 160, ECF No. 384). Haleck was arrested for disorderly conduct. (Trial Tr. Day 4 at p. 18, ECF No. 385).

Officer Makishi testified that after Haleck was on the sidewalk he suddenly stopped screaming and did not appear to be breathing. (Trial Tr. Day 3 at p. 160, ECF No. 384). Officer Makishi immediately called for an ambulance. (Id. at p. 161). Officer Makishi performed cardiopulmonary resuscitation ("CPR") with other officers until the EMTs arrived. (Id. at pp. 162, 174-75). Officer Makishi also placed the pads of an automated external defibrillator ("AED") on Haleck's chest and the machine advised not to shock Haleck but to continue with CPR. (Id. at p. 177).

Haleck was transported to Queen's Medical Center where he was examined by Dr. Irminne Van Dyken. (Trial Tr. Day 2 at p. 101, ECF No. 383). Dr. Van Dyken testified that Haleck tested positive for methamphetamine. (Id. at p. 132). Haleck died the following day.

Dr. Christopher Happy, the Chief Medical Examiner for the City and County of Honolulu, conducted an autopsy. (Trial Tr. Day 1 at p. 51, ECF No. 382). Dr. Happy testified that methamphetamine intoxication was a major contributing factor to Haleck's cause of death. (Id. at pp. 54-55). Dr. Happy explained that Haleck had a number of contributing causes including hypertensive cardiovascular disease, rhabdomyolysis with metabolic and respiratory acidosis, and acute renal failure. (Id. at p. 54). Dr. Happy testified that the use of a Taser did

18

not play any part in Haleck's death.  (Id. at p. 58).

Emergency Room physician Dr. Stacey Hail testified as an expert.  Dr. Hail testified that Haleck died from methamphetamine-induced excited delirium syndrome.  (Trial Tr. Day 5 at pp. 35-41, ECF No. 386).  She testified that the deployment of the Taser did not contribute to Haleck's death. (Id. at p. 28).  She testified that there was no evidence that Haleck had been electrocuted by the Taser and that even if he had, a Taser does not cause cardiac arrest.  (Id. at pp. 25-28). Dr. Hail also testified that the Officers' use of the pepper spray did not contribute to Haleck's death.  (Id. at p. 22).

Dr. John J. Peters, Jr., Ph.D., also testified as an expert in the fields of law enforcement training and police practices. (Trial Tr. Day 5 at p. 101, ECF No. 386).  Dr. Peters testified that the Defendant Officers' use of force complied with national standards and guidelines given the immediate threat that Haleck posed to himself, the Officers, and others.  (Id. at pp. 128-129).

## STANDARDS OF REVIEW

### RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

Pursuant to Federal Rule of Civil Procedure 50(b), a party may file a renewed motion for judgment as a matter of law.  Rule 50(b) provides:

**(b)  Renewing the Motion After Trial; Alternative
     Motion for a New Trial**

If the court does not grant a motion for judgment as a
matter of law made under Rule 50(a), the court is
considered to have submitted the action to the jury
subject to the court's later deciding the legal
questions raised by the motion.  No later than 28 days
after the entry of judgment—or if the motion addresses
a jury issue not decided by a verdict, no later than 28
days after the jury was discharged—the movant may file
a renewed motion for judgment as a matter of law and
may include an alternative or joint request for a new
trial under Rule 59.  In ruling on the renewed motion,
the court may:

> (1)  allow judgment on the verdict, if the jury
>      returned a verdict;
>
> (2)  order a new trial; or
>
> (3)  direct the entry of judgment as a matter of
>      law.

Fed. R. Civ. P. 50(b).


**MOTION FOR NEW TRIAL**

A motion for a new trial is governed by Federal Rule of

Civil Procedure 59.  Fed. R. Civ. P. 59 provides:

**New Trial; Altering or Amending a Judgment**

(a)  In General.

> (1)  *Grounds for New Trial*.  The court may,
>      on motion, grant a new trial on all or
>      some of the issues—and to any party—as
>      follows:
>
> > (A)  after a jury trial, for any reason
> >      for which a new trial has
> >      heretofore been granted in an
> >      action at law in federal court.

Fed. R. Civ. P. 59(a)(1)(A).

A trial court may grant a new trial based upon insufficiency of the evidence "only if the jury's verdict was against the clear weight of the evidence." Tortu v. Las Vegas Metro. Police Dep't, 556 F.3d 1075, 1083 (9th Cir. 2009). A new trial may not be granted simply because the court would have arrived at a different verdict. Martin v. Cal. Dep't of Veterans Affairs, 560 F.3d 1042, 1046 (9th Cir. 2009).

The standards for granting new trials pursuant to Federal Rules of Civil Procedure 59 and 60 are essentially the same. Wharf v. Burlington N. R.R. Co., 60 F.3d 631, 637 (9th Cir. 1995). A new trial is properly granted where a party can provide by clear and convincing evidence that the verdict was obtained through fraud, misrepresentation or other misconduct and where the party can establish that the conduct complained of prevented the losing party from fully and fairly presenting his case. Id.

## ANALYSIS

**I.  Plaintiff's Renewed Motion For Judgment As A Matter Of Law Pursuant To Federal Rule Of Civil Procedure 50(b)**

Pursuant to the Federal Rules of Civil Procedure, a Rule 50(b) Motion for Judgment as a Matter of Law is not a freestanding motion, but rather is a renewed Fed. R. Civ. P. 50(a) Motion. Seungtae Kim v. BMW Fin. Servs. NA, LLC, 142 F.Supp.3d 935, 941 (C.D. Cal. 2015). The party must first make a Rule 50(a) motion for judgment as a matter of law before the case

is submitted to the jury.  If the judge denies the motion, and if the jury then returns a verdict against the moving party, the party may renew its motion pursuant to Rule 50(b).  EEOC v. Go Daddy Software, Inc., 581 F.3d 951, 961 (9th Cir. 2009).

On June 3, 2019, Plaintiff filed a Memorandum in Support of an Oral Motion for Judgment as a Matter of Law pursuant to Fed. R. Civ. P. 50(a).  (ECF No. 366).  Plaintiff raised three arguments:

(1)  Plaintiff argued that the Ninth Circuit Court of Appeals' Unpublished Memorandum Opinion dated July 10, 2018, which affirmed the District Court's June 28, 2017 Order on summary judgment, should be treated as "law of the case."  Plaintiff argued that the District Court should ignore the actual facts presented at trial and rely on cherry-picked statements made by the Ninth Circuit Court of Appeals, based on facts that were disputed and construed in the light most favorable to the Plaintiff, to rule in favor of Plaintiff at trial;

(2)  Plaintiff argued that based on the evidence at trial, the District Court should find that the Defendants' use of force was unreasonable;

(3)  Plaintiff argued that he was entitled to punitive damages.

Here, Plaintiff continues to advance the first two arguments, but has abandoned his claim for punitive damages.

**A.   The District Court Must View The Evidence In The Light Most Favorable To Defendants In Reviewing Plaintiff's Motion**

A jury's verdict must be upheld against a motion for judgment as a matter of law if it is supported by substantial

evidence.  <u>Wallace v. City of San Diego</u>, 479 F.3d 616, 624 (9th Cir. 2007).  Substantial evidence is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion from the same evidence.  <u>Id.</u>

The District Court reviews all the evidence in the record when analyzing a motion for judgment as a matter of law.  <u>Reeves v. Sanderson Plumbing Products, Inc.</u> 530 U.S. 133, 150 (2000). The District Court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor when reviewing a Rule 50 motion. <u>Josephs v. Pac. Bell</u>, 443 F.3d 1050, 1062 (9th Cir. 2006).

Judgment as a matter of law may only be granted when the evidence permits just one reasonable conclusion, and that conclusion is contrary to the jury's verdict.  <u>Wallace</u>, 479 F.3d at 624.  "While the court must review the entire evidentiary record, it must disregard all evidence favorable to the moving party that the jury is not required to believe."  <u>Id.</u>  The evidence is stated in the light most favorable to upholding the jury's verdict.  <u>Kimes v. Haw. Dep't of Educ.</u>, Civ. No. 16-00264 JMS-RLP, 2018 WL 3058856, *1 (D. Haw. June 20, 2018).

**B.    Plaintiff Misunderstands The Law Of The Case Doctrine**

Plaintiff fundamentally misunderstands both the law of the case and appellate precedent.

On June 28, 2017, the District Court issued an ORDER GRANTING DEFENDANT LOUIS M. KEALOHA'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO THE LIABILITY OF DEFENDANTS CHRISTOPHER CHUNG, SAMANTHA CRITCHLOW, STEPHEN KARDASH, LOUIS M. KEALOHA, AND CITY AND COUNTY OF HONOLULU FOR VIOLATIONS OF CONSTITUTIONAL RIGHTS AND GRANTING DEFENDANT CITY AND COUNTY OF HONOLULU'S AMENDED MOTION FOR SUMMARY JUDGMENT AND GRANTING, IN PART, AND DENYING, IN PART, DEFENDANTS CHRISTOPHER CHUNG, SAMANTHA CRITCHLOW, AND STEPHEN KARDASH'S AMENDED MOTION FOR SUMMARY JUDGMENT. (ECF No. 224).

In the Order, the District Court denied qualified immunity to Defendant Officers Christopher Chung, Samantha Critchlow, and Stephen Kardash based on the disputes of fact in the record. (Id. at pp. 35-36). The Court, construing the record **in the light most favorable to the Plaintiff**, found that there were genuine issues of material fact that prevented the District Court from granting the Defendant Officers' qualified immunity on Plaintiff's claim for excessive force. (Id.)

The Defendant Officers appealed the District Court's denial of qualified immunity. An order denying qualified immunity on summary judgment may be immediately appealed under the collateral order doctrine. KRL v. Estate of Moore, 512 F.3d 1184, 1188-89 (9th Cir. 2008).

The Appellate Court's review of the District Court's denial of qualified immunity is limited. <u>Plumhoff v. Rickard</u>, 572 U.S. 765, 771-73 (2014). Appellate courts must "view the facts in the light most favorable to the nonmoving party" when reviewing an interlocutory appeal on the issue of qualified immunity. <u>Id.</u> at 768.

The District Court's ruling denying summary judgment has no bearing on the Rule 50(b) Motion. The District Court does not construe this record in a Rule 50(b) Motion in the light most favorable to Plaintiff, but rather the exact opposite. The Court construes the record in the light most favorable to the Defendants. Plaintiff's attempt to ignore the standard of review pursuant to Fed. R. Civ. P. 50 is not well taken.

The Ninth Circuit Court of Appeals, sitting <u>en banc</u>, recently addressed the nonsensical nature of Plaintiff's argument concerning the law of the case doctrine in <u>Peralta v. Dillard</u>, 744 F.3d 1076, 1088 (9th Cir. 2014) (en banc). The Appellate Court explained, as follows:

> Peralta argues that the law of the case doctrine precluded the district court from granting [Defendants] judgment as a matter of law because it had previously refused to grant them summary judgment. But **the denial of a summary judgment motion is never law of the case** because factual development of the case is still ongoing. Denial of summary judgment may result from a factual dispute at the time. That dispute may disappear as the record develops....
>
> Pretrial rulings, often based on incomplete information, don't bind district judges for the

remainder of the case.  Given the nature of such
motions, it could not be otherwise.  At the summary
judgment stage, for example, trial courts ask only
whether there could be a material issue of fact.  They
must draw all inferences in the non-movant's favor, *see*
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106
S.Ct. 2505, 91 L.Ed.2d 202 (1986), and rest their
rulings on the evidence that they think *could* be
introduced at trial.  But when considering whether to
grant judgment as a matter of law, they look at the
evidence actually introduced at trial.

It makes no sense to say that a ruling that the
plaintiff could hypothetically prove some set of facts
that would support his claim prevents a district court
from later finding that the plaintiff had not, in fact,
proven those facts.

<u>Peralta</u>, 744 F.3d at 1088 (emphasis added); <u>see</u> <u>also</u> <u>Cefalu</u>

<u>v. Vill. of Elk Grove</u>, 211 F.3d 416, 423-24 (7th Cir. 2000).

Just as in <u>Peralta</u>, the disputes of fact at the summary

judgment stage and the courts' rulings that Plaintiff may be able

to prove his case, does not mean that the jury is unable to find

that Plaintiff, in fact, did not prove his case at trial.

The law of the case doctrine provides that a court will not

reexamine an issue previously decided by the same or higher court

in the same case.  <u>United States v. Jingles</u>, 702 F.3d 494, 499

(9th Cir. 2012).  The doctrine is a judicial invention designed

to aid in the efficient operation of court affairs.  <u>Milgard</u>

<u>Tempering, Inc. v. Selas Corp. of Am.</u>, 902 F.2d 703, 715 (9th

Cir. 1990).  The trial court is not bound by a prior decision on

factual or legal issues where evidence presented in a subsequent

trial is substantially different than previously presented.  <u>Pit</u>

River Home and Agric. Coop Ass'n v. United States, 30 F.3d 1088, 1096-97 (9th Cir. 1994).

The Court explained in its order on summary judgment that genuine disputes of material fact prevented a ruling on the substance of the excessive force claim or the question of qualified immunity. (Summary Judgment Order at pp. 31-36, ECF No. 224). The Court stated there were multiple, complex, material disputes of fact that were present at the time of the summary judgment ruling, including:

> There are questions of fact as to the use and effectiveness of the Taser triggered by Officer Chung. There are questions as to the extent that Haleck posed a threat to the Officers and others. There is a question about the immediacy and level of threat the traffic on South King Street posed during the incident.

(Id. at p. 224).

On appeal, the Ninth Circuit Court of Appeals agreed that qualified immunity could not be granted based on the limited record at summary judgment. The Appellate Court viewed the facts in the light most favorable to Plaintiff and drew all reasonable inferences in his favor and affirmed the District Court's denial of qualified immunity. (Ninth Circuit Memorandum at p. 2, ECF No. 241).

Plaintiff seeks to view all of the evidence in the light most favorable to him and to draw all inferences in his favor, but he ignores both the legal standard and the differences between the limited evidence available at summary judgment and

the overwhelming evidence that was provided at trial.

The amount and depth of evidence set forward at trial was drastically different from the limited evidence that was available at summary judgment. The doctrine of "law of the case" is not applicable when the trial court is receiving actual evidence at trial, that is significant, new evidence following adjudication of an issue by the appellate court. Hagood v. Sonoma Cty. Water Agency, 81 F.3d 1465, 1473 (9th Cir. 1996).

At trial, there was significant evidence of the immediate danger that Haleck posed to himself, others, and the Defendant Officers. The trial evidence included testimony that cars and a Honolulu City Bus passed through the street, less than 15 feet from Haleck and the Officers. The trial evidence also included the eyewitness testimony of Sandy Apana and Chad Kumagai that corroborated the Defendant Officers' testimony that they each perceived Haleck as creating an immediate danger to himself, the Officers, and other bystanders.

There was also significant, new evidence concerning the ineffectiveness of both the Taser and the pepper spray. The trial evidence included medical evidence that Haleck's cause of death was due to methamphetamine intoxication and not force applied by the Officers.

There was an absence of evidence to support Plaintiff's theory of the case at trial. Plaintiff provided no evidentiary

basis for many of the inferences that Plaintiff requested the jury to conclude in his favor.

Plaintiff's argument based on the doctrine of law of the case is wholly misplaced.

## II.  The Weight Of The Evidence Supports The Jury's Verdict

The standard for overturning a jury verdict and entering a contrary judgment or ordering a new trial based on the weight of the evidence is very high.  <u>Settlegoode v. Portland Pub. Schs.</u>, 371 F.3d 503, 512 (9th Cir. 2004).  The court will direct judgment as a matter of law only if "the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict."  <u>Josephs</u>, 443 F.3d at 1062.  As explained above, the court must review the evidence "in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."  <u>Id.</u>  A jury's verdict must be upheld if it is supported by substantial evidence, which is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion.  <u>Pavao v. Pagay</u>, 307 F.3d 915, 918 (9th Cir. 2002).

Substantial evidence supports the jury's determination that the Defendant Officers did not use excessive force in violation of the Fourth Amendment to the United States Constitution.

Whether an individual has been subjected to excessive force

pursuant to the Fourth Amendment requires consideration of the reasonableness standard set forth in Graham v. Connor, 490 U.S. 386, 395-96 (1989).  The Graham factors balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.  Id.  The factors include whether the suspect poses an immediate threat to the safety of the officers or others, the severity of the crime at issue, and whether he is actively attempting to evade arrest by flight.  Id.

The Ninth Circuit Court of Appeals has explained that the "immediacy of the threat posed by the suspect is the most important factor."  Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014).  The Graham factors are not exhaustive, but rather, the jury must consider the totality of the circumstances. Bryan v. MacPherson, 630 F.3d 805, 826 (9th Cir. 2010).

Police officers are not required to use the least intrusive degrees of force possible.  Forrester v. City of San Diego, 25 F.3d 804, 807-08 (9th Cir. 1994).  This is, in part, because, "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."  Graham, 490 U.S. at 396-97.

Evidence at trial demonstrates that at the time of the

incident, Haleck was wearing dark clothing and walking in the middle of a busy, six-lane street in Downtown Honolulu, Hawaii, after 8:00 p.m. at night, and that the street was dimly lit. (Trial Tr. Day 2 at pp. 82-83, ECF No. 383; Trial Tr. Day 5 at p. 90, ECF No. 386; Trial Tr. Day 6 at pp. 12-13, EF No. 397).

Haleck posed an immediate threat of danger to himself, the public, and the Defendant Officers.  (Trial Tr. Day 1 at pp. 100, 110, 156, ECF No. 382; Trial Tr. Day 5 at pp. 90, 93, ECF No. 386; Trial Tr. Day 6 at pp. 13-15, ECF No. 397).  Eyewitnesses Sandy Apana and Chad Kumagai testified that cars were driving down the street near Haleck, and were required to change lanes to avoid an accident while Haleck was zigzagging and evading the Defendant Officers as they attempted to detain him.  (Trial Tr. Day 5 at p. 91, ECF No. 386; Trial Tr. Day 6 at pp. 13-15, ECF No. 397).

A Honolulu City Bus, upon which Apana was a passenger, passed approximately 10 to 15 feet from Haleck and the Officers. (Trial Tr. Day 4 at p. 48, ECF No. 385; Trial Exhibit 24).  The Defendant Officers perceived the threat and according to Officer Kardash, "We were all in danger of being run over by a car." (Trial Tr. Day 4 at p. 27, ECF No. 385).

Officers Chung, Critchlow, and Kardash each instructed Haleck to move to the sidewalk.  Haleck refused to comply with their commands.  (Trial Tr. Day 1 at pp. 100, 154-55, 163, ECF

No. 382; Trial Tr. Day 2 at p. 82, ECF No. 383; Trial Tr. Day 3
at p. 25, ECF No. 384; Trial Tr. Day 4 at pp. 8-9, ECF No. 385).
Haleck took a fighting stance directed toward Officer Samantha
Critchlow and physically charged at Officer Stephen Kardash.
(Trial Tr. Day 2 at p. 83, ECF No. 383; Trial Tr. Day 4 at pp. 8-
9, ECF No. 385).  Haleck evaded the Officers and ran from them to
avoid being detained.  (Trial Tr. Day 1 at p. 108, ECF No. 382;
Trial Tr. Day 2 at pp. 83, 151, ECF No. 383; Trial Tr. Day 3 at
p. 25, ECF No. 384).

The Defendant Officers first warned Haleck that they would
use pepper spray and then a Taser if he continued to disobey
their commands to move to the sidewalk.  Haleck continued to
ignore the Defendant Officers' instructions.  (Trial Tr. Day 1 at
pp. 163-64, ECF No. 382; Trial Tr. Day 3 at p. 35, ECF No. 384;
Trial Tr. Day 5 at p. 94, ECF No. 386).

The Defendant Officers attempted to use pepper spray and a
Taser to control Haleck, but the devices had no effect on him.
(Trial Tr. Day 1 at pp. 110, 113-15, 117, 157, 161-63, 168-71,
ECF No. 382; Trial Tr. Day 2 at p. 82, ECF No. 383; Trial Tr. Day
3 at pp. 34, 38-39, 48, ECF No. 384; Trial Tr. Day 4 at pp. 16,
46, ECF No. 385; Trial Tr. Day 5 at pp. 94-95, ECF No. 386).

It was only when Haleck tripped on his falling shorts and
fell to the ground that they were able to remove him from the
busy street.  (Trial Tr. Day 2 at pp. 13-14, ECF No. 383; Trial

Exhibit 24).  Even then, Haleck continued to try and avoid detention.  He struggled with the Officers, tried to push himself up, kicked his legs, and screamed.  (Trial Tr. Day 2 at p. 15, ECF No. 383; Trial Tr. Day 3 at pp. 49, 159, 168-69, ECF No. 384; Trial Tr. Day 4 at pp. 16-17, ECF No. 385).

Expert testimony from medical doctors Christopher Happy and Stacey Hail explained that neither the use of the Taser nor the use of the pepper spray contributed to Haleck's death.  (Trial Tr. Day 1 at p. 58, ECF No. 382; Trial Tr. Day 5 at pp. 22, 35-41, ECF No. 386).

There was no expert testimony that either the use of the pepper spray or the Taser caused or contributed in any way to Haleck's death.

The jury considered all of the evidence and found Officer Chung, Officer Critchlow, and Officer Kardash reasonably believed that Haleck posed an immediate danger to himself, the public, and to the Officers.  (Trial Tr. Day 1 at p. 109, ECF No. 382; Trial Tr. Day 2 at p. 6, ECF No. 383; Trial Tr. Day 4 at pp. 27, 48, ECF No. 385).

The jury also credited the testimony of police practices' expert Dr. John Peters.  Dr. Peters testified that the Defendant Officers' use of force complied with national standards and guidelines given the immediate threat that Haleck posed to himself, the Officers, and others.  (Trial Tr. Day 5 at pp. 128-

29, ECF No. 386).  The jury is permitted to credit the testimony of one expert witness over another, and "it would be inappropriate for the Court to substitute its own view for the conclusions reached by the jury after hearing all the competing evidence."  Beckway v. DeShong, 2012 WL 1355744, at *4 (N.D. Cal. Apr. 18, 2012).  It is not the Court's role to second-guess the jury's credibility findings.  Johnson v. Paradise Valley Unified Sch. Dist., 251 F.3d 1222, 1227 (9th Cir. 2001).

There was substantial evidence to permit the jury to find that the Defendant Officers' actions were objectively reasonable in light of the totality of the facts and circumstances. Plaintiff's analysis of the Graham factors ignores both the law and the evidence.  Plaintiff's Motion attempts to improperly cast the facts in the light most favorable to the Plaintiff, and it ignores the standard of review that the law requires.  Gray v. Bd. of Cty. Com'rs of Frederick Cty., 551 Fed. Appx. 666, 675-76 (4th Cir. Jan. 8, 2014) (finding a proper review of the evidence demonstrates that the jury was entitled to find that the officer did not use excessive force when he deployed a Taser multiple times at a suspect who posed an imminent safety threat).

There was substantial evidence concerning the Graham factors upon which the jury relied.  There was evidence that the Officers did not know if Haleck was armed; evidence that Haleck did not comply with the Officers' verbal commands; evidence that Haleck

presented an immediate threat to himself, the public, and the Officers in a busy street with on-coming traffic; and evidence that neither the use of the pepper spray nor the Taser was effective and did not cause any incapacitation of Haleck.  Little v. City of Richmond, 2015 WL 3543127, *5 (N.D. Cal. June 5, 2015) (finding the jury was permitted to find the officer acted reasonably in each deployment of the Taser because the officer was concerned the plaintiff was armed, the first two deployments of the Taser were ineffective, and the plaintiff was actively resisting arrest); Soto v. City of New York, 283 F.Supp.3d 135, 139-42 (S.D.N.Y. 2017); Cavanaugh v. Woods Cross City, 718 F.3d 1244, 1251 (10th Cir. 2013) (upholding a jury verdict that the defendant officer did not use excessive force in deploying a Taser where there was sufficient evidence for the jury to find that the suspect posed an immediate threat to the safety of the officers and others).

The evidence was far from being so clearly in the Plaintiff's favor that it permits only one reasonable conclusion in his favor.  Go Daddy Software, Inc., 581 F.3d at 961.

## III. Plaintiff's Motion For A New Trial

Plaintiff, in the alternative, moves for a new trial pursuant to Federal Rules of Civil Procedure 59(a) and 60(b). Pursuant to Federal Rule of Civil Procedure 59(a), a district

court has discretion to grant a new trial where a verdict is based on false or perjurious evidence or to prevent a miscarriage of justice.  Molski v. M.J. Cable, Inc., 481 F.3d 724, 729 (9th Cir. 2007).  The decision whether to grant a motion for a new trial lies within the discretion of the trial judge.  Merrick v. Paul Revere Life Ins. Co., 500 F.3d 1007, 1013 (9th Cir. 2007).

Federal Rule of Civil Procedure 60(b) provides that on motion and upon such terms as are just, the Court may relieve a party from a final judgment, order or proceeding due to mistake, newly discovered evidence, fraud, misrepresentation, misconduct by an opposing party, or other reason justifying relief from the operation of the judgment.  Fed. R. Civ. P. 60(b).

Relief pursuant to Rule 60(b) is to be used sparingly as an equitable remedy to prevent manifest injustice and is to be utilized only where extraordinary circumstances exist.  Harvest v. Castro, 531 F.3d 737, 749 (9th Cir. 2008).

## A.   Use Of The Term "Homicide" At Trial

Plaintiff requests a new trial on the basis that the Court limited both Parties' use of the word "homicide" during trial. Plaintiff attempts to re-litigate the Court's ruling on the Motions in Limine.  The Court addressed the use of the term "homicide" in its Order #2 On Defendants' Motions in Limine. (ECF No. 352).  The Court explained, as follows:

36

> The meaning of "homicide" for purposes of this case is limited to the autopsy report and the death certificate. The term "homicide" cannot be put before the jury until the term has been explained by the medical experts Dr. Christopher Happy and/or Dr. Stacey Hail. Only the two qualified medical experts may explain the meaning of "homicide" within the context of the autopsy report and the death certificate.

(Id. at pp. 15-16, ECF No. 352).

The Court is permitted to limit the use of legal terminology that may confuse or mislead the jury. Federal Rule of Evidence 403; Crawford v. City of Bakersfield, 2016 WL 5870209, *8 (E.D. Cal. Oct. 6, 2016) (granting defendants' motion in limine to exclude terms such as "murder," "homicide" and killed" as it relates to the manner of decedent's death). Homicide has both a legal and a scientific explanation, and the Court limited the Parties' use of the term so as not to confuse or manipulate the jury due to common perceptions that the word "homicide" is equivalent to "murder."

Plaintiff was given ample opportunity to ask questions of Dr. Christopher Happy, the medical examiner who listed "homicide," as the manner of death. (Trial Tr. Day 1 at pp. 52-59, ECF No. 382). Plaintiff was able to introduce the death certificate into evidence and publish the Exhibit to the jury. (Trial Exhibit 39). Plaintiff was also able to cross-examine Dr. Stacey Hail about the term. (Trial Tr. Day 5 at p. 54, ECF No. 386). Plaintiff was able to discuss "homicide" at length during his closing arguments. (Trial Tr. Day 7 at pp. 45-49, 67, ECF

No. 388).

Plaintiff has not demonstrated how any limitation on his use of the term "homicide" would support granting a new trial.

## B.   Introduction Of Evidence Concerning "Excited Delirium Syndrome" At Trial

Plaintiff argues that he is entitled to a new trial on the basis that the Court permitted Dr. Stacey Hail to provide her expert opinion on the cause of Haleck's death due to methamphetamine-induced excited delirium syndrome.

Again, Plaintiff attempts to re-litigate the Court's rulings on the Motions in Limine.  The Court addressed the issues concerning Haleck's cause of death in Order #1 On Plaintiff's Motions In Limine.  (ECF No. 351).

The Court found that expert Dr. Stacey Hail had the requisite training, education, and skill to testify as an expert concerning cause of death and that her methods were based on reliable data, principles, and methods.  The Court cited to numerous federal cases that have permitted Dr. Hail to testify as an expert witness in similar cases.  (Order #1 at p. 4, ECF No. 351).  The Court also cited to numerous cases rejecting Daubert challenges to the admissibility of expert testimony concerning cause of death based on excited delirium syndrome, including Ninth Circuit case law that has permitted district courts to admit expert testimony regarding excited delirium syndrome in

cases brought pursuant to 42 U.S.C. § 1983. (Order #1 at pp. 5-9, ECF No. 351).

Contrary to Plaintiff's argument, Plaintiff was not limited in cross-examining Stacey Hail about the cause of death. Plaintiff had the opportunity to cross-examine Dr. Hail about her opinions as to cause of death at length. (Trial Tr. Day 5 at pp. 43-87, ECF No. 386). There was also extensive cross-examination about Dr. Hail's reliance upon the American College of Emergency Physicians' "Excited Delirium Task Force White Paper Report To The Council And Board Of Directors," Trial Exhibit 79. (Trial Tr. Day 5 at pp. 46, 58, 60-65, 84, ECF No. 386).

The Court properly limited the cross-examination of Dr. Stacey Hail where it was outside the scope of direct and where Plaintiff's counsel violated the Court's Order #3 On Motions in Limine. Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986) (explaining that trial courts have "wide latitude" to impose reasonable limits on cross-examination).

Plaintiff claims that excited delirium is "highly controversial," but he introduced no expert testimony to support his position. Plaintiff chose not to obtain his own expert to either establish his theory of the case or to refute the Defendants' admissible evidence concerning excited delirium syndrome. Plaintiff now attempts to re-litigate the issue and seeks a second chance to rebut Defendants' evidence. Plaintiff

39

has not demonstrated that a new trial is warranted on this basis.

### C. Plaintiff's Attacks On Opposing Counsel

Misconduct by trial counsel results in a new trial if the flavor of misconduct sufficiently permeates an entire proceeding such that it is clear that the jury was influenced by passion and prejudice in reaching its verdict. <u>Kehr v. Smith Barney, Harris Upham & Co., Inc.</u>, 736 F.2d 1283, 1286 (9th Cir. 1984). The moving party must demonstrate that opposing counsel's misconduct substantially interfered with the moving party's ability to present its case. <u>Cal. Sansome Co. v U.S. Gypsum</u>, 55 F.3d 1402, 1405 (9th Cir. 1995).

Plaintiff has not demonstrated that any improper statements by Defendants' counsel impacted the proceeding so substantially to warrant a new trial. Contrary to Plaintiff's allegations, Defendants' counsel did not violate the Court's Motion in Limine Order #3. The Court had extensive discussions with the Parties regarding Haleck's numerous car accidents and the previous altercations with the police, which took place on March 15, 2015, the night before the Subject Incident of March 16, 2015. The Court permitted Defendants to introduce limited evidence that on March 15, 2015, Haleck was involved in multiple car accidents, Haleck used methamphetamine on that date, and Haleck sustained physical injuries and required medical attention. (Order #3 On

40

Motions In Limine, ECF No. 361). Although there was a dispute as to the actual number of car accidents Haleck was involved in on the prior night, Defendants' counsel's statement that Haleck was involved in four car accidents on March 15, 2015 was consistent with the evidence that the Court permitted to be introduced pursuant to its Order #3 On Motions in Limine.

Any alleged harm based on counsel stating "four" accidents rather than "multiple" accidents is not substantial. The jury was instructed that the arguments and statements by the attorneys are not evidence. (Court's Jury Instructions No. 3, "Remember that questions, statements, objections, and arguments by the lawyers are not evidence," ECF No. 370).

Plaintiff also has failed to demonstrate that any delay by Defendants' counsel in bringing the Taser darts to court substantially interfered with his ability to present his case. Plaintiff was able to present the evidence to the jury and was able to examine his witness, Dr. Irminne Van Dyken, about the darts. See S.E.C. v. Jasper, 678 F.3d 1116, 1129 (9th Cir. 2012).

Finally, Plaintiff makes reference in his Motion that "this was but one of many instances of opposing counsel's tactics during trial that prejudiced Plaintiff in the presentation of his case." (Pla.'s Motion at p. 19, ECF No. 381-1). Plaintiff must raise the issue in order for the Court to address it. Vague

references to "many instances" does not allow the Court to evaluate Plaintiff's allegations.

Plaintiff has not established a basis for a new trial based on conduct by Defendants' counsel.

### D.   Plaintiff's Unspecified Claims Of Bias

Plaintiff requests a new trial before a different District Court Judge based on general allegations of bias.  Plaintiff fails to make specific arguments as to how the Court was biased against him other than ruling in the opposing party's favor.

The fact that a judge has made rulings adverse to a party, standing alone, is not a basis for disqualification.  Liteky v. United States, 510 U.S. 540, 555 (1994).  Opinions formed by the judge on the basis of facts introduced or facts occurring in the course of the proceedings do not constitute a basis for a bias motion "unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible."  Id. Judicial remarks that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.  Id.; see United States v. Hernandez-Escarsega, 886 F.2d 1560, 1581 (9th Cir. 1989).  A judge's ordinary efforts at courtroom administration, including stern or short-tempered remarks, do not support a finding of bias.  Liteky, 510 U.S. at 556.

42

Plaintiff has not filed a motion for recusal or disqualification.  Plaintiff has not specified any basis for bias other than rulings against him.  For example, Plaintiff states in a footnote that, "Notwithstanding the discussion of the numerous instances of bias and prejudice in this memorandum, there are other instances where the Court's handling of other pre-trial and trial matters such as jury selection and the Court's different treatment of Plaintiff's and Defendant Officers' counsel demonstrate the Court's bias and prejudice.  Plaintiff does not waive the discussion of these other instances of the Court's bias and prejudice on appeal."  (Pla.'s Motion at p. 18, n. 2, ECF No. 381-1).

The Court cannot address allegations that Plaintiff fails to raise before it.  It is for the Appellate Court to decide whether Plaintiff can raise issues on appeal that were not exhausted before the District Court.

**E.    Treating Physician's Testimony**

Plaintiff argues that he is entitled to a new trial on the basis that the Court limited Dr. Irminne Van Dyken's testimony because she was not disclosed by Plaintiff as an expert witness and did not provide a written report.

Again, Plaintiff attempts to re-litigate the Court's rulings on the Motions in Limine.  The Court addressed the issues

concerning Dr. Van Dyken's testimony when it granted, in part, and denied, in part, Defendants' Motion in Limine No. 13 to Exclude Queen's Medical Center Doctors and Nurses From Opining On Cause Of Death Or The Existence Of Taser Probe Wounds Or Marks in its Order #2 On Plaintiff's Motions In Limine. (ECF No. 352).

The Court largely denied Defendants' Motion and permitted Plaintiff to ask Dr. Van Dyken about her observations and treatment of Haleck, including evidence about the Taser probes and her opinion as to cause of death as it was formed during the time that she treated Haleck. Plaintiff was specifically permitted to elicit testimony about Dr. Van Dyken's preliminary medical report as to Haleck's cause of death when she treated him in the emergency room. Dr. Van Dyken testified that Haleck died from anoxic brain injury after a cardiac arrest. (Trial Tr. Day 2 at p. 137, ECF No. 383).

Plaintiff acknowledges that it did not designate Dr. Irminne Van Dyken as an expert and did not provide a written expert report pursuant to Fed. R. Civ. P. 26. The Court ruled in its Order #2 on Motions in Limine that as a treating physician, Dr. Van Dyken was allowed to testify about personal observations and treatment of Haleck. She testified that she removed Taser probes from Haleck's skin, but she did not know if the Taser was effective because she was not at the scene and there were no burns marks on his skin to indicate electrocution. (Trial Tr.

44

Day 2 at pp. 113, 135-36, ECF No. 383).

Dr. Van Dyken's testimony overstepped her role as a lay witness. She opined that the presence of the probes made her now "wonder why [Haleck] went into cardiac arrest," despite the fact that there was no physical evidence of electrocution. (Trial Tr. Day 2 at p. 134, ECF No. 383). Such testimony was not part of Dr. Van Dyken's medical opinion that was formed during the course of treatment. Dr. Van Dyken's detailed records of her medical treatment of Haleck on March 16 and 17, 2015 do not indicate that Haleck was electrocuted. (Trial Exhibit 57).

A lay witness treating physician is not permitted to provide expert medical opinions unless the opinion was formed at the time of treatment. Goodman v. Staples The Office Superstore, LLC, 644 F.3d 817, 826 (9th Cir. 2011) (explaining that a treating physician is only exempt from Rule 26(a)(2)(B)'s written report requirement to the extent that his opinions were formed during the course of treatment); see Morris v. Bland, 666 Fed. Appx. 233, 239 (4th Cir. 2016) (upholding the exclusion of testimony from lay witness treating physicians concerning proximate cause where the opinions were not formed during the course of treatment). The Court did not to strike the testimony but gave a curative instruction and reiterated at side bar that a treating physician who did not file a written expert report is limited to lay witness testimony and is not permitted to provide

inadmissible expert medical opinion.  (Trial Tr. Day 2 at pp.
139-43, ECF No. 383).

A new trial is not warranted on account of Dr. Van Dyken's
testimony.

### F.    Experts Cannot Testify As To Legal Conclusions

Plaintiff argues that he is entitled to a new trial because
the Court prevented his expert from providing legal opinions to
the jury.  Specifically, Plaintiff claims that Dr. Richard
Lichten should have been permitted to given an expert opinion
about the ultimate legal issue in the case.

Plaintiff's argument, again, attempts to re-litigate the
Court's rulings on the Motions in Limine.  The Court stated in
its Order #2 On Motions In Limine (ECF No. 352) that Mr. Lichten
could testify as a police practices expert but could not testify
as to the ultimate legal conclusion.

Plaintiff sought to elicit testimony from Mr. Lichten that
the Defendant Officers acted unreasonably in violation of the
Fourth Amendment.  An expert witness may not testify about a
legal conclusion or the ultimate legal issue in the case.  Fed.
R. Evid. 704(a); Hangarter v. Provident Life and Acc. Ins. Co.,
373 F.3d 998, 1016 (9th Cir. 2004).  Police practices experts may
testify as to law enforcement standards and procedures and
whether the officers' actions comported with such standards and

46

procedures.  <u>Abdullahi v. City of Madison</u>, 423 F.3d 763, 772 (7th

Cir. 2005).  Police practices experts may not testify whether the

officers' actions were "reasonable" or "excessive" because those

are ultimate issues left to the trier of fact.  <u>United States v.</u>

<u>Williams</u>, 343 F.3d 423, 435-36 (5th Cir. 2003) (finding admission

of testimony that the shooting of the suspect was not reasonable

was error, because reasonableness under the Fourth Amendment is a

legal conclusion); <u>Hygh v. Jacobs</u>, 961 F.2d 359, 364 (2d Cir.

1992) (finding expert testimony that the officer's use of force

was not justified under the circumstances and totally improper

constituted an impermissible legal conclusion); <u>Vaughn v. City of</u>

<u>Los Angeles</u>, 2017 WL 8786868, *3 (C.D. Cal. Oct. 30, 2017)

(explaining that the expert could not render an opinion that the

officer's use of force was "reasonable" because it was a legal

conclusion); <u>N.W. v. City of Long Beach</u>, 2016 WL 9021966, *2-*3

(C.D. Cal. June 7, 2016) (precluding the expert from providing an

opinion as to whether the force used a reasonable); <u>see</u> <u>Specht v.</u>

<u>Jensen</u>, 853 F.2d 805, 810 (10th Cir. 1988) (<u>en</u> <u>banc</u>); <u>Berry v.</u>

<u>City of Detroit</u>, 25 F.3d 1342, 1353 (6th Cir. 1994) (finding

expert could not testify that the City acted with deliberate

indifference).

Plaintiff was also limited in asking hypothetical questions

to Mr. Lichten that were not based on evidence in the record.

There was no evidence in the record that the Defendant Officers

had any prior knowledge that Haleck suffered from a mental illness and there was no evidence that the Defendant Officers were told that Haleck suffered from any mental illness before they encountered him.

The Defendant Officers did not know of Haleck's accidents, drug use, or medical condition that the other officers had encountered the previous night on March 15, 2015.  The Court allowed Mr. Lichten to testify about how he believed the Officers should have behaved if they suspected that Haleck was mentally ill or on drugs, rather than if they had actual knowledge. (Trial Tr. Day 3 at pp. 98-99, ECF No. 384).

Plaintiff has not demonstrated that a new trial is warranted based on Mr. Lichten's testimony.

### G.    Jury Instructions

The District Court has substantial latitude in tailoring jury instructions.  Gilbrook v. City of Westminster, 177 F.3d 839, 860 (9th Cir. 1999).  If a party claims than an erroneous jury instruction was given, the erroneous instruction is not grounds for granting a new trial unless the error affects the essential fairness of the trial and a new trial is necessary to achieve substantial justice.  Jazzabi v. Allstate Ins. Co., 278 F.3d 979, 985 n.24 (9th Cir. 2002).

Prejudice resulting from an erroneous jury instruction is

presumed unless it is more probable than not that the jury would
have reached the same verdict had it been properly instructed.
Clem v. Lomeli, 566 F.3d 1177, 1183 (9th Cir. 2009).

Plaintiff challenges the Court's use of the language in the
Ninth Circuit Model Jury Instruction 9.20 that defines
"intentionally" with respect to the separate "seizures" that
formed the basis of Plaintiff's Fourth Amendment claim.  Nothing
about the Court's use of the model instruction was inaccurate or
misleading.  Brown v. Villaraigosa, 637 Fed. Appx. 1001, 1004
(9th Cir. Jan. 26, 2016).

Plaintiff also challenges the Court's tailoring of the
language in the Ninth Circuit Model Jury Instruction 9.25 that
provides factors for the jury to evaluate in assessing a Fourth
Amendment excessive force claim.  The Court omitted language
concerning "whether it should have been apparent to the officers
that the person he used force against was emotionally disturbed."
9th Cir. Model Instruction 9.25.  The Court omitted the
instruction based on the lack of evidence that had been put
forward as to whether the Defendant Officers had knowledge or
should have had knowledge that Haleck was "emotionally
disturbed."  There was evidence that the Defendant Officers
believed that Haleck may have been on drugs or may have been
intoxicated.  There was insufficient evidence to support a jury
instruction as to whether it was apparent or should have been

49

apparent to the Defendant Officers at the time of the subject incident that Haleck was "emotionally disturbed." This was not a case where the Officers had a history with the suspect and either knew of the suspect's mental illness or were told by dispatch that the suspect suffered from or was suspected of suffering from a mental illness. Even if the Court had included the instruction, nothing about the jury's verdict indicates that the omission prejudiced the Plaintiff. Clem, 566 F.3d at 1183.

Plaintiff also argues that the Court should have included jury instructions for terms such as "intermediate level of force, failure to comply not active resistance, misdemeanor offenses, homicide, and punitive damages." These proposed instructions are not included in the Ninth Circuit's Model Civil Jury Instructions which contain a detailed section of § 1983 excessive force instructions. Plaintiff's proposed instructions were confusing and misleading. Lewis v. Cty. of San Diego, 2017 WL 3582960, *16 (S.D. Cal. Aug. 18, 2017) (rejecting plaintiff's motion for a new trial based on a request for misleading and confusing Section 1983 jury instructions). The Court properly excluded a punitive damages instruction based on its ruling on Defendants' Rule 50(a) Motion with respect to punitive damages. (Order on Punitive Damages, ECF No. 377).

Plaintiff has failed to demonstrate that he was unduly prejudiced based on the Court's jury instructions such that he is

entitled to a new trial.

**H.    Plaintiff Failed To Timely Disclose His Closing Argument Demonstrative Aid**

For the first time in his Reply, Plaintiff challenges the limitations in the use of his proposed demonstrative aid at closing.  Issues raised for the first time in a reply brief are considered waived.  <u>Eberle v. City of Anaheim</u>, 901 F.2d 814, 818 (9th Cir. 1990).

Even considering the merits of Plaintiff's argument, the Court did not err in limiting Plaintiff.  Plaintiff was required to disclose all demonstrative aids on or before April 23, 2019.  (Scheduling Order, ECF No. 248).  Plaintiff failed to do so, and only presented the aid on the day of closing, more than a month past the deadline, on the last day of trial, June 4, 2019.

The aid also contained inaccurate and misleading information, which Defendants raised before Plaintiff attempted to use the aid.  The late disclosure prevented the Parties from properly evaluating the accuracy of the information in the aid and the Court properly excluded it.

//

//

//

//

//

## CONCLUSION

Plaintiff's Renewed Motion For Judgment As A Matter Of Law Or, In The Alternative, Motion For New Trial (ECF No. 381) is **DENIED.**

IT IS SO ORDERED.

Dated: January 31, 2020, Honolulu, Hawaii.

Helen Gillmor
United States District Judge